UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TINA BASS                                                                                                 PLAINTIFF

v.                                                CIVIL ACTION NO. 3:10-CV-00054-S

AL J. SCHNEIDER COMPANY                                             DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of defendant Al. J. Schneider Company ("Schneider") for summary judgment (DN 26). Plaintiff Tina Bass ("Bass") has responded (DN 31), and Schneider has replied (DN 32). For the reasons set forth herein, Schneider's motion will be **GRANTED**.

## BACKGROUND

Bass brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Kentucky Civil Rights Act ("KCRA"). She claims she was fired from her job at the Galt House Hotel, which Schneider operates, because she made a sexual harassment complaint against her supervisor.

Bass began working at the Galt House as a banquet captain in November 2006. In June 2008, Bass complained to Rebecca Bryant, the Director of Human Resources at the Galt House, that she and two other women had been sexually harassed by her supervisor, Lamont Melson. The Galt House conducted an investigation, eventually concluding that Bass' claims were without merit.

On October 22, 2008, Bass was involved in an argument with Hector Breton, an Executive Steward at the Galt House, as the banquet staff prepared for a breakfast meeting. The disagreement apparently arose because Breton had not provided the coffee pots Bass wanted to use for the meeting. Several witnesses saw the confrontation between Breton and Bass; all have stated in affidavits that Bass was acting in an aggressive or angry manner, and at least one witness stated that Bass "put her arms out and moved her chest toward Hector Breton." Aff. of Dontoya Harris (DN 26, Ex. 9). Bass herself has admitted that during the confrontation, she "used profanity" toward Breton and "behaved in a threatening and aggressive manner." Pl.'s Resp. (DN 31) at 2. She also "does not dispute the inference that she became physical during the exchange." *Id.*

The Galt House investigated the incident between Bass and Breton, and terminated Bass in a letter dated October 28, 2008. The stated reason for termination was the October 22 confrontation.

After her termination, Bass filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC investigated her claim, but closed Bass' file because it was unable to conclude that any statute had been violated. *See* DN 31-1. Bass received a Right-To-Sue letter on October 27, 2009 and filed this action on January 22, 2010. Bass claims her termination violated both Title VII and the KCRA because it was the result of her sexual harassment complaint rather than the confrontation with Breton. Schneider now moves for summary judgment on Bass' claims.

**ANALYSIS**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

A plaintiff who seeks relief under Title VII or the KCRA[1] must, as a threshold matter, set forth a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). To do this, the plaintiff must show (1) that the plaintiff engaged in an activity protected by Title VII; (2) that the employer had knowledge of the protected activity; (3) that the employer thereafter took an adverse employment action toward the employee; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154

---

[1]Courts use the same analysis for both Title VII and KCRA retaliation claims. *See Dollar General Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. App. 2006).

F.3d 344, 350 (6th Cir. 1998)). If the employer meets this burden, the burden of production then shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional discrimination. *Id.*

Schneider argues that Bass cannot establish a prima facie case of discrimination because Bass cannot show that there was a causal connection between the protected activity (her sexual harassment complaint in June 2008) and her termination. In order to establish a causal connection, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *See Nguyen*, 229 F.3d at 563 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). No one factor is dispositive in this analysis, but evidence that the plaintiff was treated differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (citing *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987)).

Bass claims that she has presented sufficient evidence to establish a causal connection between her complaint and her termination. She argues that in addition to showing "temporal proximity," she can also present evidence that Melson and Bryant believed Bass to be an "instigator" of sexual harassment complaints and that "non-instigators" were not terminated for conduct similar to that Bass engaged in with Breton. *See* Pl.'s Resp. (DN 31) at 21. Bass further contends that Bryant and Melson were "untruthful" about the disciplinary action taken against one of Bass' fellow employees and that Melson made a "threatening statement" during the sexual harassment investigation. *Id.*

The evidence to which Bass points fails to support an inference that she would not have been fired had she not complained of sexual harassment. First, Bass' claim of "temporal proximity" rings hollow given that she was terminated more than four months after making her sexual harassment complaint. Although the Sixth Circuit has not set any firm deadline with respect to temporal proximity, it does require an adverse employment action to follow an employee's protected activity within a "short" period of time, *see Nguyen, supra,* which is usually less than six months. *Parnell v. West*, No. 95-2131, 1997 WL 271751 (6th Cir. May 21, 1997) at *3. The four-month gap between Bass' complaint and her termination is not so small as to be considered *per se* evidence of retaliation, *see Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("[t]he mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation."), and given the lack of other evidence of retaliation on Schneider's part, the court finds Bass' "proximity" argument unconvincing.

Bass' claim that perceived "instigators" of complaints were treated differently than "non-instigators" is similarly unconvincing. She notes that three other employees who had apparently engaged in some form of threatening or aggressive behavior at work were merely disciplined rather than terminated. These employees did not initiate sexual harassment complaints. Thus, Bass argues, she has shown that similarly situated employees who did not complain were treated more leniently than she was.

Bass claims that employees Lynn Dixon and Michael Buchenberger, were "disciplined, but not terminated, for engaging in conduct similar to that which allegedly led to Bass's termination." DN 31 at 10. However, the record contains little evidence about what Dixon and

Buchenberger did that led to the discipline. Melson stated in his deposition that Buchenberger was "maybe one time" disciplined for "something like" arguing, using profanity, or acting aggressively. Melson Depo. at 26. However, Melson was unable to recall any details about the incident, *id.* and Bass has provided no additional information that would allow the court to assess whether Buchenberger engaged in the same or similar conduct as Bass did. Similarly, Melson stated that Dixon was disciplined for a "confrontation with an employee, one of her co-workers," *id.* at 27, but was unable to recall further details about the incident. *Id.* at 28. Because of the lack of information about the confrontations that led to the disciplinary action against them, Buchenberger and Dixon are of little comparative value for the purposes of a disparate treatment analysis.

Bass also claims that co-worker Termaia Williams was disciplined but not fired for, like Bass, arguing with a co-worker. However, the record shows that Williams' conduct was of a much different nature than Bass'. Williams was disciplined in August 2008 for arguing with a co-worker about the proper way to fill out a time sheet. Unlike in Bass' case, the Williams and the other employee were in a private office area, and no others were around. Aff. of Lamont Melson (DN 32-2) ¶ 4. And although Williams was "moving her head back and forth" in the co-worker's direction, *id.*, there is no allegation, unlike in Bass' case, that Williams became physically aggressive or made any threats of bodily harm against her co-worker. Thus, Williams' conduct appears from the record to be sufficiently different from Bass' as to render her case of little comparative value as well.

Moreover, Bass' claims of disparate treatment are undermined by evidence that over the last three and a half years, at least 17 other Schneider employees have, like Bass, been

terminated for aggressive or threatening behavior in the workplace. Many of these employees had, like Bass, used profanity during disagreements with co-workers or supervisors or threatened others physical harm. *See* DN 32-7. There is no evidence that these employees engaged in any protected activity. Any claim Bass has of having been singled out for termination because she was an "instigator" is therefore seriously undermined by the fact that many other Schneider employees have been fired for acting aggressively in the workplace.

The record does not bear out Bass' claim that Melson or Bryant were untruthful during the discovery process regarding the discipline meted out to another employee, nor is it clear how such a claim, even if true, would tend to show that Bass' firing was retaliatory. Finally, Bass overstates the nature of the alleged "threat" Melson made. Bass claims that Melson at one point told Williams that he was not concerned about "anything" because "two or three [banquet] captains wouldn't be [there] in a few months." DN 31 at 20. This statement is ambiguous at best and exists in the record only as hearsay.[2] It does little to support any inference that Bass was fired because she raised a sexual harassment complaint against Melson.

Because Bass has failed to show a causal connection between her complaint and her firing, the court concludes that she has failed to set forth a prima facie case of retaliation. Even if Bass had satisfied her prima facie burden, Schneider has articulated a legitimate, non-discriminatory reason for her firing: Bass' aggressive behavior during the confrontation with Breton. Although Bass argues that the reason was pretextual, her arguments are unconvincing

---

[2]Evidence of Melson's alleged threat is presented in the form of a handwritten note from Williams to Bryant, in which Williams complained about "bad vibes" from Melson. *See* DN 31-3. The note is dated June 2008. Williams states, "[Melson] . . . told another [banquet] captain that he is not worried about anything because two or three of the captains won't be here in a few months[,] so now I feel that by me coming forward that my job is on the line . . . ." *Id.*

because they rely on the same weak evidence as her arguments for prima facie retaliation. Schneider's motion for summary judgment will therefore be granted.

    A separate order will issue in accordance with this opinion.